ASSOCIATED MAINTENANCE AND ROOFING COMPANY, INC., Appellee,

v.

ROCKWELL INTERNATIONAL CORPORATION, Appellant;
Hamilton Insurance Company et al.

[Cite as *Associated Maintenance & Roofing Co., Inc. v. Rockwell Internatl. Corp.* (1993), 95 Ohio App.3d 638.]

Court of Appeals of Ohio,
Hardin County.

No. 6-92-13.

Decided June 9, 1993.

*Meister, Ayers & Meister Co., L.P.A., Andrew J. Ayers* and *Constance A. Snyder,* for appellee.

*Cavitch, Familo & Durkin Co., L.P.A., E. John Brzytwa* and *Karen L. Giffin,* for appellant.

*McNamara & McNamara, Dennis D. Liston* and *Lisa Weekley Coulter,* for Mutual Insurance Company and Old Republic Insurance Company.

---

HADLEY, Judge.

This is an appeal by defendant-appellant, Rockwell International Corporation ("Rockwell"), from the judgment of the Common Pleas Court of Hardin County in favor of plaintiff-appellee, Associated Maintenance and Roofing Company, Incorporated ("Associated").

In late winter of 1984, Rockwell held a pre-bid conference for the removal of the existing roof and the construction of a new roof for its Kenton, Hardin County, Ohio axle manufacturing facility ("plant"). Associated, along with other contractors, attended the pre-bid conference. At the pre-bid conference, the contractors received Rockwell's written specifications for the project and walked the roof of the plant.

After reviewing all the bids, Associated was determined to be the successful bidder and was awarded a $1,500,000 plus contract. However, Associated was unable to obtain a performance bond for the entire amount of the contract. Rockwell and Associated then agreed to cancel the original contract and split it up into eighteen mini-contracts not to exceed Associated's bonding limit of $100,000 per contract, and to reduce the overall contract price by $90,000.

All eighteen mini-contracts stated:

"1. *Statement of the work.*

"A.   Builder shall perform the following, which shall collectively hereafter be referred to as the 'work': Provide the necessary labor, material, tools, equipment and supervision for the total removal and recovery of the existing roof system at Rockwell International facility at Kenton, Ohio per attachment No. 1 dated September 28, 1984, attachment No. 2 dated May 1, 1980, attachment No. 3 dated September 28, 1984, attachment No. 4 dated February 14, 1984, and drawing entitled 'Existing Roof Plan', dated 6/77, as attached hereto and made a part hereof.

"B.   * * *

"C.   Rockwell shall pay to Builder for the performance of the work and all of the Builder's obligations hereunder a fixed price of $_____, which price shall constitute total compensation to be paid to Builder for all of its undertakings hereunder * * * plus $1.08 /sq. ft. Metal Decking as approved by Rockwell.

"2. *Changes.*

"A.   Builder and Rockwell may at any time, without notice to or consent of any sureties, by written change agreement hereto, make changes in the Work or otherwise amend this contract.

"B.   Notwithstanding the foregoing, Rockwell may at any time, by written change notice to Builder, * * * make changes on or additions to the specifications, require additional work or services or direct the omission of work or services covered by this contract. * * * Builder shall make no additions, changes, alterations or omissions except upon written order of Rockwell given, as provided herein, before the work in which such addition, change, alteration or omission is involved is done or any services are rendered.

"C.   No change agreement or change notice to this contract shall be binding on either Builder or Rockwell unless in writing signed by Rockwell's Vice President–Purchasing, Director–Procurement Management, Division Director–Material, or Manager–Material and for Builder by Jim or Ed Caudill."

Associated proceeded to remove the existing roof and build the new roof according to the contracts and the attachments. During the course of the project, Rockwell and Associated agreed in writing to certain contract changes regarding the amount of metal decking and drains. Rockwell, also by written change order, had Associated perform additional work beyond the contracts. Rockwell then paid Associated for all the additional work required by the change notices.

During the course of removing the existing roof and building the new roof, Associated had to purchase more material than it had considered when bidding the project. After completion of the entire project, Associated submitted additional invoices to Rockwell for the additional material and labor totalling $351,-

132.59. Rockwell refused to pay these additional invoices, as the contracts were for a fixed price and/or no written change notice had been issued and approved by the appropriate personnel of Rockwell or Associated.

Associated then filed a complaint in the Common Pleas Court of Hardin County against Rockwell. Associated, in its complaint, alleges in Count I that Rockwell unilaterally changed the contract and damaged Associated in the amount of $90,480; Count II that Rockwell required Associated to do substantial other work beyond that required by the contract in the amount of $351,132.59, and Rockwell has not paid Associated for the extra-contractual work; and Count III that Rockwell's failure to make timely payments under the contract damaged Associated in the amount of $150,000.

Rockwell timely filed its answer and counterclaimed against Associated for breach of contract. Rockwell then filed a third-party complaint against Hamilton Insurance Company ("Hamilton") as surety on eleven performance bonds. Rockwell amended its third-party complaint to add Old Republic Insurance Company ("Republic") as surety on four performance bonds. Rockwell also amended its counterclaim to add breach of express and implied warranties and negligence.

A jury trial then commenced on April 28, 1992. After Associated's case-in-chief, the trial court granted Rockwell's motion for directed verdict on Counts I and III of Associated's complaint. The trial court held that there was sufficient evidence for Count II to go to the jury. After the close of all the evidence, the jury returned a verdict in favor of Associated in the amount of $358,491.37. The jury also found in favor of Associated, Hamilton and Republic on Rockwell's counterclaim. Rockwell timely filed its motion for judgment notwithstanding the verdict or for a new trial. The trial court overruled Rockwell's motion. Rockwell now appeals only from the judgment in favor of Associated and asserts the following four assignments of error:

### Assignment of Error No. 1

"It was error to overrule Rockwell's motions for directed verdict and judgment notwithstanding the verdict where the work claimed by Associated as extra was clearly and unambiguously required by the existing contracts between the parties."

### Assignment of Error No. II

"It was error to overrule Rockwell's motion for directed verdict and judgment notwithstanding the verdict, even if the alleged extra work was not required by the written contracts, where there was no evidence that such work had been approved in advance by a written change order signed by an authorized Rockwell officer and no evidence upon which reasonable minds could conclude that there

was no reasonable doubt [*sic* ] that Rockwell had waived its right to approve the work by written change order."

## Assignment of Error No. III

"If the jury should have been permitted to determine whether Rockwell orally waived the requirement that the extra work must be approved in advance in writing by an officer authorized by the contract, then the trial court erred when it refused to instruct the jury that such a waiver may only be established by evidence that demonstrates a clear, unequivocal, unmistaken, decisive intent by Rockwell to waive the requirement."

## Assignment of Error No. IV

"The trial court erred when it overruled Rockwell's motion for new trial based upon juror misconduct."

Rockwell argues that the trial court erred in overruling its motion for directed verdict as the contract language was clear and unambiguous and no written change notice was approved for the invoices submitted by Associated.

Civ.R. 50(A)(4) provides that a trial court shall direct a verdict if, after construing the evidence most strongly in favor of the party against whom the motion is directed, it finds that reasonable minds could come to only one conclusion and that conclusion is adverse to the non-moving party.

Associated's president, James Caudill ("Caudill"), testified in its case-in-chief that the invoices submitted to Rockwell were for a "variance in the contract" and that Rockwell paid Associated the fixed price stated on each contract plus the unit price for the metal decking. Caudill further testified that at no time did Associated submit a written change notice to Rockwell. Associated now argues that the contracts were ambiguous or in the alternative that Rockwell waived the written change notice requirement.

All the contracts contained the following terminology:

"1. *Statement of the work.*

"A. Builder shall perform the following, which shall collectively hereafter be referred to as the 'work': Provide the necessary labor, material, tools, equipment and supervision for the total removal and recovery of the existing roof system at Rockwell International facility at Kenton, Ohio per attachment No. 1 dated September 28, 1984, attachment No. 2 dated May 1, 1980, attachment No. 3 dated September 28, 1984, attachment No. 4 dated February 14, 1984, and drawing entitled 'Existing Roof Plan', dated 6/77, as attached hereto and made a part hereof.

"C. Rockwell shall pay to Builder for the performance of the work and all of the Builder's obligations hereunder a fixed price of $\_\_\_\_, which price shall constitute total compensation to be paid to Builder for all of its undertakings hereunder * * * plus $1.08/sq. ft. Metal Decking as approved by Rockwell."

■ The above language of the contract is not ambiguous. Caudill upon cross-examination testified that he understood what the terms meant and that he had read each contract before signing. Caudill also testified that he understood that the only unit price to be paid was for the metal decking. Associated cannot now complain that the contract was ambiguous.

Associated then argues that Rockwell waived the written change notice based upon what Hottman and Braxton had stated to him regarding the additional invoices.

Each contract contained the following language:

"C. No change agreement or change notice to this contract shall be binding on either Builder or Rockwell unless in writing signed by Rockwell's Vice President–Purchasing, Director–Procurement Management, Division Director–Material, or Manager–Material and for Builder by Jim or Ed Caudill."

Caudill testified that the plant engineer, Hottman, and Rockwell's senior facilities engineer, Braxton, told him that if he wanted a change in the unit price of the metal decking it was beyond the scope of their authority and he needed to contact Mr. Dessecker in Troy, Michigan.

■ Caudill further testified that he understood what the terms "total removal and recovery of the existing roof system" meant and also that any changes in the contract had to be done by written change notice. Caudill testified that he did not request a change notice in writing as specified in the contract. He testified that he assumed that he would be paid unit prices for these materials according to his bid. He testified that Hottman and Braxton had told him that Rockwell would settle these additional invoices after completion of the entire roofing project. However, Caudill previously testified that he *knew* that any change in the roofing project had to be done in writing and agreed to by certain Rockwell employees. Thus, per his own testimony, Caudill knew that Hottman and Braxton were not authorized to approve any changes in the contracts.

Even if there was sufficient evidence to go to the jury that the contract was ambiguous or that Hottman and Braxton had the authority to waive the written change, the record does not support Associated's complaint. Count II of Associated's complaint states:

"Plaintiff completed the work on the original contract as set forth therein and as subsequently subdivided by Defendant in the eighteen mini contracts, in a

professional and proper manner as required thereby, for which work Plaintiff has been paid. Defendant, however, as a condition of permitting Plaintiff to continue the contract work, required Plaintiff to do substantial other work beyond that which was required by the contract, said additional work being valued at the sum of $365,445.55."

"Plaintiff has submitted invoices for said extra work to Defendant, but Defendant has made only partial payment thereon and still owes Plaintiff the sum of $351,132.59 for said extra-contractual work."

Associated, in its brief, argues that "*at no time did Associated ever assert a claim for extra-contractual work but all monies due and owing were for work required under the contacts.*" (Emphasis added.) Upon direct examination, Caudill testified that the roof was in dire need of replacement, that the mini-contracts set forth a fixed price for the total removal and recovery of the existing roof system, and that the only exception was the replacement of metal decking which would be paid on an unit-price basis.

■ Caudill's testimony does not support Count II of Associated's complaint that the invoices were for extra work beyond what was required by the contract. If the additional invoices were for extra work beyond the scope of the contract, then the issues raised at trial, whether the contract was ambiguous or whether there was a waiver of the written change notice, are irrelevant. The record below does not demonstrate that Rockwell received a benefit beyond the scope of the contract where it would have been unjustly enriched, as the contracts were not ambiguous. Therefore, the additional invoices submitted by Associated were for materials and labor required under the contracts *per se*. As Caudill's testimony in Associated's case-in-chief does not support Count II of Associated's complaint, the trial court erred in not granting Rockwell's motion for directed verdict. For the foregoing reasons, Rockwell's Assignments of Error Nos. III and IV are moot. Rockwell's Assignments of Error Nos. I and II are hereby sustained, the judgment of the trial court is reversed, and the cause is remanded to the trial court, which is ordered to grant judgment in favor of Rockwell notwithstanding the verdict.

*Judgment reversed*
*and cause remanded.*

Evans, P.J., and Thomas F. Bryant, J., concur.